Jeffrey A. Mitchell
Michael B. Roth
E. Timothy McAuliffe, Jr.
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100

*Attorneys for Plaintiff*
*Bear Stearns Investment Products Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

BEAR STEARNS INVESTMENT PRODUCTS INC.,

                Plaintiff,

                -vs-

GESHOA FUND and GESHOA STRUCTURED FINANCE LTD.,

                Defendants.
------------------------------------------------------------- x

07 CV 7035

**COMPLAINT**

**Plaintiff Demands a Trial By Jury**

        Plaintiff Bear Stearns Investment Products Inc. ("Bear Stearns"), by its attorneys Dreier LLP, alleges for its Complaint as follows:

### THE PARTIES

        1.    Bear Stearns is a New York corporation with its principal place of business located at 383 Madison Avenue, New York, New York.

        2.    Upon information and belief, defendant Geshoa Fund ("Geshoa") is a Cayman Islands Exempted Limited Liability Company incorporated on with registration number CR 123796 with its principal place of business located at Corporate Centre, West Bay Road, P.O. Box 31106 SMB, Grand Cayman, Cayman Islands that issued various classes of shares,

{00278709.DOC;}

including Geshoa Fund Class A ("Geshoa A") (Geshoa and Geshoa A collectively referred to herein as "Geshoa A").

3. Upon information and belief, defendant Geshoa Structured Finance, Ltd. ("Geshoa SF") is a Cayman Islands Exempted Corporation incorporated under the Companies Law with registration number 13455 with its principal place of business located at Walker House, c/o Walkers SPV Limited, P.O. Box 908 GT, Mary Street, Grand Cayman, Cayman Islands.

## JURISDICTION

4. This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1332(a), as there is complete diversity between the parties and the matter in controversy exceeds $75,000.

5. The Court has personal jurisdiction over Geshoa and Geshoa SF pursuant to New York Civil Practice Law and Rules §302(a)(1) because defendants transacted business and negotiated and entered into a contract within the state of New York.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## THE RELEVANT BACKGROUND

7. This is an action for breach of contract and breach of the obligation to negotiate in good faith, arising from defendants' willful breach of an unequivocal agreement to sell to Bear Stearns claims defendants held against Refco Capital Markets, Ltd. and certain of its related entities ("Refco").

**The Refco Bankruptcy**

8. On or about October 17, 2005, Refco filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

9. Upon information and belief, at the time of the bankruptcy filing, Geshoa A and Geshoa SF were creditors of Refco in amounts totaling $17,326,707.43 and $8,576,246.77, respectively.

10. Upon information and belief, Geshoa A and Geshoa SF filed proofs of claim in connection with Refco's bankruptcy proceeding for their unsecured claims totaling $25,902,954.20.

11. After Refco filed for bankruptcy, Geshoa A and Geshoa SF sought to sell their claims (collectively, the "Claims").

**Bear Stearns' Purchase of the Claims**

12. Bear Stearns is in the business of, *inter alia*, buying, selling, and facilitating the trade of distressed debt.

13. On or about March 30, 2007, Bear Stearns, through Jared T. Horowitz., a Vice President in Bear Stearns' Special Situations Group, offered to purchase the Claims from defendants for 27.32 cents on the dollar (*i.e.*, 89.00 cents on the dollar less 61.68 cents on the dollar which Refco had obligated itself to pay defendants), subject to certain other terms and conditions.

14. Defendants accepted Bear Stearns' offer on the price for the Claims on the same day.

15. In connection therewith and as is customary in the industry, Bear Stearns provided defendants with a trade confirmation setting forth the price and other material terms of the trade.

16. On April 26, 2007, Defendants' counsel, Daniel J. Saval, Esq. of Brown Rudnick Berlack Israels LLP proposed a few minor changes to the confirmation, which plaintiff accepted and incorporated into an amended trade confirmation.

17. On April 27, 2007, the amended trade confirmation, which was satisfactory to Defendants, was returned to Defendants' counsel.

18. It is customary in the industry for the purchase and sale of distressed debt that the parties memorialize their agreement in a more formal document in order to conclude all aspects of the transaction.

19. However, it is generally understood in the industry, by custom and practice, that the "papering" of the transaction acts as a more detailed memorialization of the parties' agreement reflected in the confirmation, with the written terms generally falling within certain industry accepted guidelines.

20. Thereafter, the parties began negotiating the operative documents to formally assign the Claims from Defendants to Bear Stearns.

21. After an initial disagreement over a term and condition of the transaction, by June 22, 2007, the parties had agreed on all of the material terms of the transaction in respect to the Claims.

22. Thus, in a June 22, 2007, telephone conversation, Mr. Saval told Lawrence Condispoti of Mandel Katz & Brosnan LLP, outside counsel for Bear Stearns, that his clients had approved the respective agreements and were ready to close on the transactions.

23. Indeed, Mr. Saval confirmed the agreement in an email to Mr. Condispoti, stating as follows:

> This will confirm that Geshoa intends on going forward with the transaction, subject to final review and approval of the agreement, and they have agreed to

extend this process past close of business today in order to finalize the documents. That being said, they still are intent on closing this as soon as possible. As I mentioned, I am traveling today, but I will send you some minor and what I hope you will consider noncontroversial comments on Monday.

24. Notwithstanding the Defendants' unequivocal agreement to sell the Claims to Bear Stearns, on June 28, 2007, defendants, through their counsel, advised Bear Stearns that they would not close on the transaction.

25. By letter dated that same date, Bear Stearns reiterated that the parties had a binding, enforceable agreement and flatly rejected defendants' attempt to unilaterally cancel that agreement.

26. By letter dated July 12, 2007, Defendants, through their counsel, again denied the existence of a contract to sell the Claims, and purported to renounce any and all obligations to do so.

**The Damages Caused as a Result of the Breach**

27. By June 2007, the purchase price for debt of the same class and character as the Claims had risen significantly.

28. Bear Stearns has been injured as a result of Defendants' failure to complete the trade as agreed.

29. Moreover, in reliance on Defendants' agreement to sell the Claims to Bear Stearns, Bear Stearns entered into a separate agreement with a third party to sell a portion of the Claims.

30. Defendants' failure to finalize the transaction to sell the Claims to Bear Stearns prevented it from consummating the transaction with the third party and causing it to sustain damages.

## COUNT I
### (Breach of Contract)

31. Bear Stearns repeats and realleges each of the allegations contained in paragraphs 1 through 30 hereof as if fully set forth herein.

32. The final draft agreement forwarded by Bear Stearns to Defendants contained the terms to which they agreed to be bound, and therefore constitutes a valid and binding agreement of the parties pursuant to which Bear Stearns was obligated to buy and Defendants were obligated to sell the Claims.

33. Defendants materially and substantially breached that agreement when they, *inter alia*, refused to sell the Claims to Bear Stearns.

34. All conditions precedent have either occurred or been satisfied.

35. As a direct result of the foregoing, Bear Stearns has suffered damages in the form of lost profit and consequential damages, which amount is not less than $1,300,000.

## COUNT II
### (Breach of the Obligation to Negotiate in Good Faith)

36. Bear Stearns repeats and realleges each of the allegations contained in paragraphs 1 through 30 as if fully set forth at length herein.

37. Once the offer from Bear Stearns to purchase the Claims was accepted, defendants had a duty to use their best efforts to negotiate with Bear Stearns in good faith and then close the transaction on terms customary in the high-yield securities industry.

38. Defendants breached their obligation to negotiate in good faith when, after the parties reached an agreement on all of the material terms of a contract, defendants failed and refused to execute the final document.

39. Defendants' refusal to execute the completed documents was in breach of its obligation under New York law to act in good faith in finalizing the underlying transaction.

40. As a direct result of the foregoing, Bear Stearns has suffered damages in an amount not less than $1,300,000.

WHEREFORE, Bear Stearns demands judgment as follows:

A. On Counts One and Two, awarding Bear Stearns damages against Defendants in an amount not less than $1,300,000 to be determined at trial; and

B. Awarding Bear Stearns its costs, prejudgment interest and such other and additional relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: New York, New York
       August 6, 2007

**DREIER LLP**

By: _____
    Jeffrey A. Mitchell, Esq.
    Michael B. Roth, Esq.
    E. Timothy McAuliffe, Jr., Esq.
499 Park Avenue
New York, New York 10022
(212) 328-6100

*Attorneys for Plaintiff*
*Bear Stearns Investment Products Inc.*